MATTER OF LIM

In Deportation Proceedings

A-11422036

*Decided by Board December 13, 1967 and March 7, 1968*

Respondent, who is deportable as one excludable at entry because not a non-
quota immigrant as specified in her visa as her petitioning spouse was not
then and has never been a citizen of the United States, does not come within
the purview of section 241(f) of the Immigration and Nationality Act, as
amended, since her entry was without fraud or misrepresentation on her part.*

CHARGE:

Order:  Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable
at entry—not nonquota immigrant as specified in
visa—section 211(a)(3).

ON BEHALF OF SERVICE:  Charles Gordon
General Counsel

Pursuant to section 3.1(c) of Title 8 U.S.C. the District Director
has certified to us the decision of the special inquiry officer dated
September 27, 1967, terminating the deportation proceedings against
respondent.

Respondent, a native and citizen of China, entered the United States
on June 26, 1958 at Honolulu, Hawaii, in possession of a nonquota
immigrant visa issued to her as the spouse of Lim Hong Fon, an
alleged citizen of the United States. It was later established that re-
spondent's spouse was not then, and had never been, a citizen of the
United States, and that she, therefore, was never eligible for the non-
quota status accorded her. The Government makes no claim that re-
spondent was aware of this fact before 1966, or that she employed
fraud or misrepresentation in obtaining her visa. Respondent con-
ceded the allegations in the order to show cause, and that she is de-
portable as charged.

Respondent's husband is also the subject of deportation proceedings.
He first came to the United States in 1908, at the age of eight, claim-
ing to be the son of Lim Heung, an alleged citizen of the United States
(the record shows the paper father's correct name to be Lew Foot Yin,

*See: *Petition of Yuen Lan Hom*, 289 F. Supp. 204 (U.S.D.C., N.Y., 1968), in-
volving same issue.

but does not show whether he was ever a United States citizen), and was admitted as the citizen son of a United States citizen. It is clear that the husband knew, at all times, that he was not the blood son of this man, whom he continued to claim as his father until the whole family was involved in a confession in 1966. The husband made several departures from and entries into the United States, on all such occasions travelling as a United States citizen, and is charged with being deportable at the time of his last entry on May 1, 1956, for having been excludable under section 212(a)(20) as an immigrant not in posesession of a visa. He, too, has conceded the truth of the allegations in the order to show cause and that he is deportable as charged. There are four blood children of the marriage between respondent and her husband, all of whom entered the United States as the children of a United States citizen; at the time of the special inquiry officer's decision, at least one of them had succeeded in having his status adjusted to that of a lawful permanent resident.

The hearings of respondent and her husband were joined. At the first, on September 27, 1966, both applied for suspension of deportation, and the hearing was closed without decision. A few days later, the special inquiry officer, on his own motion, ordered the hearing reopened to permit the husband to apply for registry under section 249, for which it appeared he might be eligible. There were two reopened hearings, the last held on April 18, 1967, and on April 28, 1967 the special inquiry officer rendered a decision finding the husband ineligible for registry, because of several breaks in the continuity of his residence (he first returned to China in 1914 and remained until 1917; he resided in China for 12 years from 1926 to 1938, having sold all of his belongings in the United States before his departure; he departed for China again in 1946, after disposing of all his property here, and remained away from the United States until 1950; there was a fourth absence from October 1955 to May 1956). However, considering their ages, their ties here, the difficulties that would result if they were deported, etc., he found both respondents eligible for suspension of deportation under section 244(a)(1) and deserving of this remedy, and granted it to both in the exercise of discretion. On May 3, 1967, the trial attorney filed a notice of appeal on behalf of the Service.

On September 5, 1967, the Service withdrew its appeal, and on September 27, 1967, the special inquiry officer rendered the instant decision, terming it a "Decision * * * Upon Reconsideration." After setting forth the factual background, the special inquiry officer summarized the provisions and applicability of section 241(f), citing *Immigration and Naturalization Service* v. *Errico*, 385 U.S. 214, and *Matter of Cordero-Santana*, Int. Dec. No. 1694. He pointed out that

the evidence established that respondent did not discover her husband's alienage until some eight years after his entry. He nevertheless found respondent to come within section 241(f), stating:

* * * It would be absurd to ascribe to Congress an intent in enacting section 241(f) to save from deportation an alien who engaged in fraud in obtaining an immigrant visa and entry to the United States and maintain the unity of the family here in that case, but deny the same benefit to an alien who is innocent of any fraud in the procurement of documentation and entry and insist on deportation and separation of the family in the latter case. No such preposterous interpretation can be permitted to defeat the plainly humanitarian purpose of furthering the well established Congressional policy of maintaining the unity of American families. It must be and is concluded that the innocent as well as the fraudulent are entitled to the benefits of section 241(f).

Finding her to have been otherwise admissable at entry and to be the parent of a lawful permanent resident alien, the special inquiry officer terminated deportation proceedings as to respondent.

As to respondent's husband, who four times entered the United States under a false claim to United States citizenship, it was the special inquiry officer's opinion that he too came within the forgiveness of section 241(f), citing a case similar on its facts and decided by the Board in favor of the alien, *Lee Fook Chuey*, file A-11409328, June 2, 1967, but held decision in abeyance awaiting the outcome of the Board's decision on a Government motion for reconsideration in the *Lee* case.

On October 26, 1967, the District Director certified the matter to the Board, "because this is a case of first impression." No position, by brief or memorandum, is taken by the Service, although it may be noted that the memorandum of the trial attorney, dated September 5, 1967, withdrawing the Service appeal, shows agreement, in advance, with the course taken by the special inquiry officer.

While we are in sympathy with the result sought by the special inquiry officer, we must disagree with his interpretation of the law. Anomalous as it may seem, section 241(f) is not available to the innocent, and by its specific terms applies only to those deportable under the provisions of section 241,

* * * on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation * * *.

Additionally, ineligibility for a quota status or for the status of the visa actually obtained, when bottomed upon the knowing misrepresentation or fraud, is forgiven by section 241(f) (cf. *Immigration and Naturalization Service* v. *Errico, Scott* v. *Immigration and Naturalization Service*, 385 U.S. 214). The same ineligibility, when based upon innocent error or lack of knowledge, is not forgiven by any existing

673

provision of law. Admission of such persons, in the discretion of the Attorney General, after it had been established that such inadmissibility was not known to, and could not have been ascertained by, them in the exercise of due diligence prior to application for admission, was formerly possible under section 211(c) and (d). Those provisions were repealed *in toto* by Public Law 89-236, the Act of October 3, 1965.

Granting the strong Congressional intent, present throughout immigration and nationality legislation, of reuniting families and preventing their separation, we nevertheless find that the scope given to section 241(f) by the special inquiry officer goes beyond the limits of the statute as enacted. Extension to the innocent but ineligiible, cannot be accomplished by interpretation alone; it would require additional authorizing legislation.

For the reasons set forth above, the special inquiry officer's decision terminating proceedings cannot be sustained. The more feasible and appropriate solution to the problem presented is that reached by the special inquiry officer in his decision of April 28, 1967, granting relief to the respondent through suspension of deportation. We will, therefore, remand these proceedings to the special inquiry officer for reinstatement of the earlier order, or for such other and/or further relief as the special inquiry officer may deem appropriate herein. In view of the character of this case, and its interconnection with the case of respondent's spouse we believe it advisable that they should be presented to the Congress as a unit.

ORDER: It is ordered that the decision of the special inquiry officer, dated September 27, 1967 be and the same is hereby set aside.

*It is further ordered* that these proceedings be remanded to the special inquiry officer for the puropses set forth above.

### BEFORE THE BOARD

The question here presented is whether respondent, who is clearly deportable as charged because the spouse who petitioned for her is not and has never been a citizen of the United States, can come within the provisions of section 241(f) although she has been guilty of no fraud of any sort.

In our decision of December 13, 1967, we held that the specific language of section 241(f) clearly setting forth that it is applicable to persons deportable under the provisions of section 241,

* * * on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation * * *

prevents its extension, by interpretation, to a situation such as respondent's, without amendatory legislation. We held that the scope given to section 241(f) by the special inquiry officer, in terminating the deportation proceedings against respondent (one of whose children had achieved lawful permanent resident status), was broader than authorized by the statute, and we reversed his order and remanded the proceedings for reinstatement of the previous grant of suspension of deportation, or for such other and further relief as the special inquiry officer might deem appropriate.

The Service now moves that the "Board order of December 13, 1967, be withdrawn * * * and that the alien be granted an adjustment of status under § 241(f)." It points out that while it has urged, and will continue to urge, that *Immigration and Naturalization Service* v. *Errico*, 385 U.S. 214, must be given a limited reading, in the instant case respondent's entry was so permeated by the fraud of the husband that it comes within the spirit of the statute. No case authority or legislative history is cited in support of this position.

Despite numerous arguments before us to the contrary, we cannot regard section 241(f) as a blanket mandatory waiver of deportability, on whatever ground, for any alien who has the familial relationship specified therein. Regardless of the equities in this case, respondent does not come within its purview; the immigration laws do not permit a finding against her of derivative deportability for fraud, such as is advanced in the instant motion.[1] Her case is of the type that was formerly covered by section 211(c) and (d), permitting waiver of excludability based on innocent mistake as to status or quota chargeability, committeed by either the alien or a consular officer. Those sections were repealed by the Act of October 3, 1965 (Public Law 89-236). In the absence of such provisions, the relief of suspension of deportation, originally granted by the special inquiry officer, was the appropriate, and so far as appears from the file, the only relief from deportation available to respondent.

**ORDER:** It is ordered that the motion be denied.

---

[1] Pending decision by the Attorney General in the case of *Lee Fook Chuey*, File No. A-11409328, it is not clear whether respondent's husband's own deportability for fraud in obtaining documents and admissions as a United States citizen will bring him within the provisions of section 241(f).